Emcore Corp v. Emcore Corp 08-1265 Optium Corporation v. Emcore Corporation Three of this court's decisions answer the argument that's been made against us trying to overturn the summary judgment motion. First, this court's relatively recent decision in AstraZeneca, which we portrayed in our briefs and which was not responded to in the reply brief, holds, and I quote, intent to deceive cannot be inferred from a high degree of materiality alone, but must be separately proved to establish unenforceability due to inequitable conduct. Yet, Judge Newman, when you asked my friend on the other side what the evidence was of intent, he pointed you to materiality. Well, Mr. Klein thinks that that precedent perhaps goes too far. Well, the precedent is the precedent of the court, and I think it is the correct precedent of this court because since this court's in-bank decisions in the 1980s, it's stressed that materiality and intent are separate inquiries. But there's no question. It may not be your best argument to start citing precedent because there's precedent. There's a lot of precedent of that, including that while they may be separate prongs, that it can only be cited, it can only be used, and then our precedent cites at least three factors, right, that he knew or should have known that it existed. So our precedent is you can never use it. It's you can only use it if you can also establish the following three criteria. Am I wrong about that? Well, yes, there are cases like Farring that say that as well. Right. So his argument, I think, fairly under our precedent, is it not, that he meets those other three criteria? I'm not sure that he does meet those criteria when you look at the facts of Farring and the facts of the other case. I think there was one other case. Praxair. Praxair, yes, that set those forth. And you'll note in both of those cases that there were affirmative representations that would have been impossible to make or would have otherwise been rendered false by the submission of the omitted art or the omitted document. And what we have here also, there's another problem answered by another one of this court's precedents, again, which I hope and presume is this court's precedent, and that's the Exergen case. We're not sure, even at this stage, who the supposed bad actor is. What I heard from Mr. Klein was that the inventors knew of the materiality of this reference. But, in fact, the inventors disclosed the reference in the chain through the attorneys. The only thing we know about the communication of that report, of the invention disclosure to the attorneys themselves, is one sentence at page A209 of the record where Logan testifies that, and I quote here, yes, I believe Mike, referring to Pritzker, one of the four lawyers who handled these two applications, I believe Mike got a copy of the invention disclosures as a process of developing the patent. Well, this sentence is the entirety of the evidence that any of the lawyers knew anything about the invention disclosure. Well, but the evidence is that the inventors disclosed it to the prosecuting attorneys, and I thought somehow it got lost in the shuffle. I mean, that was your argument, right? It got lost in the shuffle? That is a much more reasonable inference on this record. That is a much more reasonable conclusion to draw. But the question is, really, on summary judgment, not whether it's a much more reasonable inference, but the inferences are supposed to be drawn for the other side. So if he's got a reasonable inference and you've got a more reasonable inference, you don't win on summary judgment. Well, I don't agree, first of all, that his inference is reasonable. I was simply trying to use the language of the third case that I was going to mention, and that's star scientific, which I think plays into the summary judgment standard so that to overcome a summary judgment motion on intent, they've got to show that a reasonable fact finder could conclude that the most reasonable inference on intent, and intent is always proved inferentially, so that's what we're talking about with regard to inferences, the most reasonable inference is that the material was withheld with deceptive intent in order to deceive the patent office. You can't find that here. In fact, the case that's being made against us is that on 11-year-old records where there is little recollection and very little documentary record in possession of any of the inventors or in possession of any of the lawyers, that somehow or another the burden should be shifted to us to disprove inequitable conduct. This is precisely the sort of, this case, if inferences of this sort were allowed and that gets past summary judgment, and it can then be bootstrapped to not say only material but highly material, then every patent holder like us is going to be in the position of facing the argument that we have to prove the absence of inequitable conduct. But let me step back a minute because your answer to me on the summary judgment question was the star scientific and their standard that it has to be the single most reasonable inference, right? How do we play that out in summary judgment? Let's assume you have an inference and the other side has an inference. Let's assume his inference is not unreasonable, which is that the inventors claim they gave it to the prosecuting attorneys and the attorneys say they didn't have it. I mean, the inferences could be that somebody is not telling the truth and they indeed did have it. How do you play into the summary judgment standard of inferences towards the other side this most reasonable inference? We've got inferences over inferences, right? Well, I think you do, and I think what you have to conclude, because, again, all intent evidence, almost all of it that I can think of, is inherently inferential. What you would have to conclude on summary judgment is that a reasonable fact finder could conclude that the most reasonable inference from the intent evidence is that there was an intent to deceive the patent office. And that is not the case here. Even if Star Scientific didn't exist, you could not uphold on a post-trial record, if this is the best evidence they've got, you could not uphold a finding of intent made on this record. That's why summary judgment under Rule 56 is appropriate. And in that regard... What if the fact finder did not believe the attorneys? Then you could on this record, right? I mean, if their credibility is brought to bear. In other words, that the attorneys were to testify, they say, I don't recall... Yeah, and the fact finder says, I don't believe you're inherently incredible, and I don't believe that. Couldn't it stand? I think that might be enough to discard that testimony. The problem is that the burden, by clear and convincing evidence, still belongs to the other side. And I don't think that simply disbelieving a denial of a charge, somehow or another, is clear and convincing proof of the charge itself. I want to add, by the way, Mr. Klein made the comment at the beginning of his argument that there was other evidence that they didn't present at summary judgment. And I just want to add there that Rule 56 is... I think this court has used the term, it's a put-up-or-shut-up time. If they didn't put the evidence in to show that they had a case for trial in front of the judge, then I don't think that we get to hear about evidence that they could have put in but didn't put in. Did your clients acknowledge that this was the closest prior art? Was that an undisputed fact? No, no, not at all. In fact... I thought the other side said that it was the closest prior art. I didn't hear him say that. I hope he didn't say that because what happened... First of all, the question C is... It really is two questions. And if you look at page 175 of the appendix, which is the invention disclosure, it asks actually two questions. It says, What were the previous methods or apparatus that were used but failed to solve the problem? And then it says... Some of this stuff is marked confidential in the briefs, is it not? It is. I need to be careful there. I'm sorry. Yeah, I was trying to be careful, but you're... But let me just say that there is a second... Tell us what you need to tell us. There is a second question there in the parenthetical, and that's the only part of the question that they seize upon. Now, an important point to note also is that the invention disclosure is actually only the first few pages of this reference. And why is that confidential, by the way, since we've mentioned... I don't know the answer to this. I was not the trial counsel. I do know that it was stamped confidential under the protective order, and we've attempted to preserve those confidences. This is a digression, but thanks to Judge Prost, we ask you both, would you take a look at what's been marked confidential in the context of everything that's transpired and give us a fresh list, either take the briefs or whatever and mark it up so that we can figure it out? We will do that, Your Honor. So if we write an opinion, we'll know what needs to be withheld. Thank you, Your Honor. Let me go back, though, to this disclosure. And the important point that I want to make here is that there's an invention disclosure, which is a form used by the company, and then it's followed by a paper that was written by Logan and Lee. And you'll note that the dates are different. The paper is dated February 1997, and the invention disclosure is dated May 1997. One of the things we don't even know on this record from this testimony of A209 is whether what Logan says Pritzko got was the whole thing. And this is important, because if he only got the first part, let's say, then that bracket at 1 in the answer to C doesn't have any reference, because that's all the way back in the February 1997 paper that was appended to it. And in fact, when he was being asked this question, if you look also at page A209, the lawyer questioning Mr. Logan is separating the invention disclosure from the Logan and Lee paper itself. So if he only got the first few pages, he had a disclosure that had bracket 1, and he could look all the way through the thing and would never find any reference to the Willems article, because it was in the Logan and Lee paper. Now, we don't know that, but let's say it was. Let's say we draw that inference, that it was attached. Now, you have to draw the inference that he was able to understand that in these apparently two separate documents that the bracket 1 referred to an end note in the appended paper. Okay, another inference. Let's say that's a reasonable inference, too. Now, we have to assume that he actually pulled the Willems reference and read it. That's another inference on top of an inference on top of an inference. Then, we have to conclude that he concluded that that reference was in fact material, another inference piled on. Then we have to conclude that he determined that he was not going to present it to the patent office because he wanted to deceive them, the ultimate inference. Now, FMC, this court's precedent, cited in our brief, says, piling inferences on top of inference on top of inference is not appropriate for summary judgment and it's certainly not an appropriate way to decide an inequitable conduct case. Unless the court has further questions, I'll give back the rest of my time to the court. Any more questions? Any more questions? Okay. Thank you. Mr. Klein.  Just a few. On the confidentiality issue, Ms. Love and I were at the trial. We can work that out. Much of this information came in at trial in a public court. Within about a week, would you give us some advice? Right, we can do that. Absolutely. With respect to... MCOR takes the position that the inventors disclosed Newman. They've said, well, they disclosed it. Well, if they disclosed it at all, which they never disclosed it to the patent office, at best, they disclosed it to the attorneys. MCOR can't credibly say, well, the inventors disclosed it, but then say there's no evidence that the attorneys ever got it. They can't have both of those. Those are mutually exclusive. At MCOR, the inventors identified the Willems reference in that invention disclosure. And I certainly don't think I said, I certainly did not mean to say, that what they meant by identifying Willems in response to question 3C was undisputed. It was disputed. And in fact, the special master accepted neither Optium's position nor MCOR's position regarding precisely what the inventors meant by identifying Willems in response to that question. The special master came up with a third view. Now, it seems to us that manifestly evidences that there is a dispute about what the inventors meant. The court should have had a trial to hear from those inventors on cross-examination, perhaps in a bench trial, to ask those inventors questions itself and assess their credibility. And the same with respect to the attorneys. The court should have had a trial to consider whether it finds credible the attorney's view that we don't remember. These are the sorts of things many of the questions Your Honor asked should have come out at a trial, but Optium did not get the opportunity. It was denied the benefit of reasonable assumptions being made in its favor based on the facts that it presented and denied the opportunity ever to present these matters at a trial where a court could assess credibility, determine clear and convincing evidence of materiality. Is that there? Clear and convincing evidence of intent. Is that there? And then, at its discretion, balance the equities and decide whether that amounts to inequitable conduct. The court should have had a trial to do that. How do you respond to the argument on FMC that was just made before counsel sat down? I'm sorry, which precise... Inference upon inference upon inference... Well, I don't think that it is. I mean, they have said the inventors disclosed Willem. They must have... If they disclosed it at all, not to the panel, it was to the lawyers. That's not an inference. The court can't say it's an inference that the lawyers got that. And, in fact, Dr. Logan testified that he gave it to Mr. Priskow, the attorney. And I don't think it's disputed that the invention disclosure with the attached report went to the patent attorneys, though it's in the record, in the brief. So I don't think that's an inference at all. And at that point, the question arises for the... It is for the attorneys then to say, what they... Why didn't you disclose it? And you can't fight off... You can't insulate, potentially, an act of bad faith, an inequitable conduct commission. You shouldn't be able to insulate that simply by saying, I don't know. I don't remember. And I think that, at that point, it is reasonable. If the other subsidiary facts, high materiality, knowledge of high materiality, and nondisclosure, if those facts are met, you should not be able to insulate your conduct by saying, gee, I don't remember. Any more questions? Any more questions? Thank you very much. Okay. Thank you, Mr. Klein. Mr. Castaignos, the case is taken under submission. All rise.